# In the United States Court of Federal Claims

Nos. 13-500C, 13-499C, 13-800C
(Filed: May 27, 2014)

```
*************************************
THE HANOVER INSURANCE            *
COMPANY et al.,                  *
                                 *
            Plaintiffs,          *    Partial Motion to Dismiss; RCFC 12(b)(1);
                                 *    Jurisdiction; Contract Disputes Act of 1978;
v.                               *    Default Termination; Valid Claim for
                                 *    Termination for Convenience Costs
THE UNITED STATES,               *
                                 *
            Defendant.           *
*************************************
```

James M. Mulvaney, Morristown, NJ, and Michael H. Payne, Philadelphia, PA, for plaintiffs.

Austin M. Fulk, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

These three consolidated cases concern a construction contract between the United States Army Corps of Engineers ("Corps") and Lodge Construction, Inc. ("Lodge"). In the complaint filed in the lead case, Lodge's surety, The Hanover Insurance Company ("Hanover"), contends that the Corps improperly terminated its contract with Lodge for default. Lodge makes this same contention in its first complaint ("Lodge I"), and then contends in its second complaint ("Lodge II") that the Corps should not have denied three of its requests for contract adjustments. Defendant moves to dismiss, for lack of jurisdiction, the claims for monetary damages asserted by Hanover and Lodge in their complaints challenging the default termination. According to defendant, plaintiffs failed to submit a valid claim for money damages to the contracting officer prior to filing suit in this court. For the reasons set forth below, the court grants defendant's motion.

### I. BACKGROUND

#### A. Factual History

On August 24, 2010, Lodge entered into a contract with the Corps to perform certain work as part of the Everglades upgrade project. Lodge's obligations under the contract were

backed by payment and performance bonds issued by Hanover. Lodge and Hanover had previously executed an Indemnity Agreement in which Lodge assigned to Hanover the right to take possession of any contract work it had been performing, and agreed to indemnify Hanover for any expenditures incurred by Hanover under the bonds.

The work that Lodge was to perform under its contract with the Corps included the design and implementation of a plan to dewater a construction area. Under the dewatering plan it developed, Lodge would relocate surface water from the construction area to onsite retention areas, where it would dissipate through percolation or evaporation. In addition, Lodge's plan called for the construction of a temporary cofferdam wall using metal sheet piling. In developing its dewatering plan, Lodge relied on geotechnical information included in the solicitation. Lodge submitted its dewatering plan to the Corps on November 29, 2010, and the Corps subsequently approved it. Several months later, Lodge provided the Corps with its design for the sheet pile wall, which the Corps ultimately approved on July 1, 2011.

Lodge began implementing its dewatering plan in July 2011. It soon became evident that the water was not dissipating from the retention areas at a rate sufficient to allow Lodge's work to be completed within the contractually mandated 720 days. Accordingly, on June 26, 2012, Lodge submitted a certified claim to the contracting officer seeking a $3,282,123.02 price increase for the additional effort required for dewatering and an additional ninety-one days for contract performance.

In the meantime, during construction of the sheet pile wall, breaches occurred in two small areas. Two weeks later, on March 29, 2012, the Corps retroactively disapproved Lodge's design for the sheet pile wall. The Corps then issued a cure notice on June 11, 2012. Ten days later, Lodge responded to the cure notice and submitted another certified claim. In this claim, Lodge sought an additional $679,279.58 and sixty-three days related to the Corps' retroactive disapproval of its design for the sheet pile wall.

The Corps then issued a show cause notice to Lodge on June 29, 2012. On July 6, 2012, three days before it responded to that notice, Lodge submitted a third certified claim, seeking $1,805,760.33 and an indeterminate number of days for being required to remove and reinstall the sheet pile wall in the area of the breaches.

The Corps did not find Lodge's response to its show cause notice to be satisfactory. Consequently, on July 23, 2012, it terminated its contract with Lodge for default, asserting that Lodge did not diligently pursue the work to ensure its completion within the contractually mandated 720-day time frame, and that Lodge did not submit an acceptable design for the sheet pile wall. That same day, the Corps made a demand on Hanover under the performance bond to either complete the work itself or tender a new contractor to complete the work. While negotiating the completion of the work with Hanover, the contracting officer denied Lodge's wall breach claim on October 15, 2012, denied Lodge's design claim on October 29, 2012, and denied Lodge's dewatering claim on December 28, 2012.

Hanover eventually tendered a new contractor, and on December 31, 2012, Hanover and the Corps executed a Tender and Release Agreement. The agreement obligated Hanover to pay the Corps $23,995,183.86, an amount that represented the difference between the sum to be paid to the new contractor to complete the work ($47,778,910.00) and the unpaid balance of the Corps' contract with Lodge ($23,783,726.14). In return, the Corps agreed to release Hanover from claims under the performance bond. In other provisions of the agreement, the parties stipulated that Hanover retained all of its rights under the bonds and the Indemnity Agreement, that Hanover did not waive Lodge's right to challenge the default termination or pursue any other claims, and that Hanover reserved the right to pursue as its own any of Lodge's claims against the Corps. The contracting officer executed the agreement on the Corps' behalf.

### B.  Procedural History

Lodge and Hanover each filed a complaint in this court on July 22, 2013. Lodge sets forth two counts in its complaint. In its first count, Lodge alleges that the Corps wrongfully terminated its contract for default, arguing that it was entitled to substantial time extensions, as described in its three certified claims. In its second count, Lodge avers that it is entitled to reimbursement for the funds that it is required to pay Hanover under their Indemnity Agreement. This amount includes the $23,995,183.86 that Hanover paid the Corps pursuant to the Tender and Release Agreement and other bond-related costs incurred by Hanover. Lodge concludes its complaint with the following prayer for relief:

> [Lodge] requests that the Court find that the Corps' termination of the contract for default was wrongful, that the Court order the termination for default be converted to a termination for the convenience of the government that will effectively result in the reimbursement to Lodge of all of the costs it incurred in the performance of the project, including, but not limited to, all sums owed to Hanover on account of Hanover having issued the Bonds and having entered into the Tender and Release Agreement with the Corps, all of which have been demanded by Hanover, overhead and profit, and further requests that the Court enter judgment against the Corps awarding Lodge damages, interest, costs, and attorneys' fees allowed by law, and such other relief as the Court deems appropriate.

Lodge I Compl. 10.

In its complaint, Hanover sets forth three counts. In its first count, Hanover avers that the Corps' termination of its contract with Lodge for default was wrongful, seeks the conversion of the default termination into a termination for the government's convenience, and estimates Lodge's damages as $23,995,183.86. In its second count, Hanover asserts an equitable subrogation claim, and alleges entitlement to an equitable lien on any amounts recovered by Lodge from the government. In its third count, Hanover alleges that it is entitled to any amounts recovered by Lodge from the government pursuant to the terms of its Indemnity Agreement with Lodge. Based on these claims, Hanover requests the following relief:

    (a)  That this Honorable Court finds that the [Corps], wrongfully terminated Lodge for default on the Project[;]

    (b)  That this Honorable Court orders that the termination for default issued by the [Corps] is converted to a termination for convenience, and, as such, Lodge and Hanover retain the right to present a final settlement termination proposal to the [Corps], pursuant to [Federal Acquisition Regulation ("FAR")] 52.249-2, including therein, but not limited to, all costs incurred by Lodge and Hanover (satisfying claims on the Payment and Performance Bonds) related to the wrongful termination for default;

    (c)  That this Honorable Court awards Hanover its costs, expenses, interest and attorney fees that they incurred as a result of the proceedings <u>sub judice</u> pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412 <u>et seq.</u>);

    (d)  That this Honorable Court awards Hanover the loss, cost and expense incurred under the Performance Bond and Payment Bond, which amount is presently estimated to exceed $23,995,183.86;

    (e)  That this Honorable Court issue an order declaring that Hanover has an equitable lien on all funds due or to become due in connection with the original Contract, including any amounts that may become due to Lodge as a result of any claims asserted or to be asserted against the Government relating to the Project which amounts are currently estimated to be in the amount of [at] least $23,995,183.86; and,

    (f)  That this Honorable Court award Hanover any other relief which it deems just and proper.

<u>Hanover</u> Compl. 9-10.

    On September 25, 2013, the court granted Hanover's motion to consolidate its case with <u>Lodge</u> I. Lodge then filed a second complaint on October 15, 2013, in which it appeals the contracting officer's decisions rejecting its wall breach, design, and dewatering claims. It requests "judgment in its favor and against the Defendant . . . in the amount of $5,767,162.93, plus interest, costs, attorney's fees permissible by law, along with at least 154 days due to government caused delays, and any other relief that this Honorable Court deems just and appropriate." <u>Lodge</u> II Compl. 12.

    Defendant responded to the two complaints in the consolidated action on November 25, 2013. In addition to filing answers, defendant moved to dismiss the claims for money damages asserted by Hanover and Lodge in those complaints. The court subsequently consolidated <u>Lodge</u> II with Hanover at the parties' request, and defendant filed an answer to Lodge's second

complaint. The parties completed briefing on defendant's motion to dismiss, and deeming oral argument unnecessary, the court is prepared to rule.

## II. DISCUSSION

Defendant moves to dismiss the claims for money damages set forth in the complaints in Hanover and Lodge I for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974). If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

Defendant's motion is premised on its contention that plaintiffs did not submit to the Corps a valid claim for the money damages at issue in Hanover and Lodge I, as required by the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613 (2006).[1] The CDA provides that in the event of a dispute between a contractor and the government "relating to a contract," all contractor claims are to be submitted in writing to the contracting officer for decision and all government claims are to be the subject of a contracting officer decision. Id. § 605(a). A claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to [the] contract." FAR 52.233-1(c). Upon receipt of a claim, the contracting officer must issue a written decision containing his or her reasoning for the outcome and advising the contractor of its right to appeal. 41 U.S.C. § 605(a). If a contracting officer fails to issue a decision "within the period required" by the statute, the failure is deemed to be a decision denying the claim. Id. § 605(c)(5). The decision of the contracting officer is final unless the contractor makes an authorized appeal. Id. § 605(b). A valid claim, a contracting officer's decision or deemed denial, and a proper appeal are all jurisdictional requirements under the CDA. See, e.g., Northrop Grumman Computing Sys., Inc. v. United States, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013); Scott Timber Co. v. United States, 333 F.3d 1358, 1365-66 (Fed. Cir. 2003); James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541 (Fed. Cir. 1996); Paragon Energy Corp. v. United States, 645 F.2d 966, 971 (Ct. Cl. 1981).

---

[1] All citations to the CDA are to the version of the statute in effect on the date that Lodge executed its contract with the Corps. Congress has since recodified title forty-one of the United States Code, revising and renumbering the provisions of the CDA. See Pub. L. No. 111-350, §§ 7101-7109, 124 Stat. 3677, 3816-26 (2011).

In its motion to dismiss, defendant notes that neither Lodge nor Hanover submitted a claim to the contracting officer to recover termination for convenience costs or other damages related to the default termination. Therefore, it argues, the court lacks jurisdiction to entertain their requests for such relief.[2]   Hanover and Lodge respond that the court does possess jurisdiction over these claims because they were effectively before the contracting officer when she terminated the contract for default and executed the Tender and Release Agreement. Indeed, plaintiffs argue, it would have been illogical for plaintiffs to submit a separate claim for damages resulting from the default termination because there is no expectation that the contracting officer would have reversed her decision to terminate the Corps' contract with Lodge for default. Moreover, plaintiffs assert, when read together, the default termination decision and the Tender and Release Agreement satisfy the CDA's jurisdictional requirements. Plaintiffs' arguments lack merit.

The factual circumstances in this case are similar to those encountered by the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Sharman Co. v. United States, 2 F.3d 1564 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc). The contract at issue in Sharman Co. concerned the manufacture of steel water tanks. Id. at 1566. The government terminated the contract for default, and the contractor filed suit under the CDA. Id. at 1566-67. In its complaint, the contractor requested the invalidation of the default termination, conversion of the default termination into a termination for the convenience of the government, and termination for convenience costs. Id. at 1567. The contractor also asserted entitlement to all of the progress payments made by the government. Id. The trial court–the United States Claims Court ("Claims Court")–dismissed the contractor's claim for termination for convenience costs because the contractor had not presented that claim to the contracting officer before filing suit. Id. at 1566-67. The contractor did not appeal this aspect of the Claims Court's decision. Id. at 1566 n.2. Nevertheless, in the concluding paragraph of its decision, the Federal Circuit remarked that "because there had been no final decision by the contracting officer on the contractor's claim for convenience termination costs, the Claims Court correctly dismissed it for lack of jurisdiction." Id. at 1573.

The Claims Court and its successor, the United States Court of Federal Claims ("Court of Federal Claims"), have reached the same conclusion in a number of other cases. See, e.g., Armour of Am. v. United States, 69 Fed. Cl. 587, 591-92 (2006) (holding that although it could entertain the contractor's challenge of a default termination and related request to convert the default termination into a termination for the government's convenience, it could not, in the absence of a final decision from the contracting officer, entertain the contractor's request "for convenience termination monetary damages"); Ralcon, Inc. v. United States, 13 Cl. Ct. 294, 296-97 (1987) (holding that it was "beyond argument" that the contractor's "claim for convenience termination damages . . . can not survive here . . . because that claim was not submitted to the contracting officer for a final decision as required by 41 U.S.C. § 605(a)"); id. at 297 n.3 ("A

---

[2]  Defendant does not seek dismissal of the monetary claims asserted in Lodge II.

claim for convenience termination damages is subject to submission and certification requirements under the plain language of 41 U.S.C. § 605(a). . . . The language of the statute imposes these procedural requirements on all contractor claims for money, regardless of the grounds upon which they are based."); see also DePonte Invs., Inc. v. United States, 54 Fed. Cl. 112, 116 (2002) ("[A] decision to terminate a contract for default is separate and distinct from a decision on any claims by a contractor for termination costs or damages."); Alaska Pulp Corp. v. United States, 34 Fed. Cl. 100, 103-04 (1995) (holding that a contractor's appeal of the government's termination of the contract was not the same as the claim for money damages that the contractor presented to the contracting officer); Boeing Co. v. United States, 31 Fed. Cl. 289, 292 (1994) (indicating that it understood the Federal Circuit to hold, in its unpublished decision remanding the case to the trial court, that a claim for termination for convenience costs is distinct from a claim challenging a default termination). Notably, plaintiffs have not cited, nor could the court locate, any precedent–either binding or nonbinding–in which a court permitted a plaintiff whose contract was terminated for default by the government to proceed with a claim for termination for convenience costs or other money damages in the absence of a CDA claim and a final decision from a contracting officer on that claim.[3] There is no dispute that neither Hanover nor Lodge submitted a claim to the contracting officer requesting termination for convenience costs or money damages related to the allegedly improper default termination. Thus, to the extent that Hanover and Lodge premise their claims for money damages in this court on the existence of a valid contractor claim under the CDA, the court lacks jurisdiction to entertain them.

Acknowledging their failure to submit a claim to the contracting officer for default termination-related money damages, Hanover and Lodge contend that it would have been futile to submit a claim to the contracting officer challenging the default termination and seeking money damages because there was little chance that the contracting officer would have reversed her decision. This contention ignores the fact that contractors do submit claims to contracting officers challenging default terminations and seeking related money damages. See, e.g., Alaska Pulp Corp., 34 Fed. Cl. at 102; Boeing Co., 31 Fed. Cl. at 291.

Hanover and Lodge also argue that the jurisdictional requirements of the CDA are satisfied by reading the default termination decision in conjunction with the Tender and Release Agreement. Specifically, plaintiffs assert that the contracting officer's default termination

---

[3] Plaintiffs rely on the decisions in Alaska Pulp Corp. and Boeing Co. for the unremarkable proposition that the Court of Federal Claims can simultaneously entertain a challenge to a default termination and a claim for termination for convenience costs and other damages related to the default termination. However, plaintiffs fail to note that in both of these cases, the contractor had previously submitted a claim to the contracting officer to recover termination for convenience costs and that the contracting officer had not issued a decision within the time set forth in the CDA. See Alaska Pulp Corp., 34 Fed. Cl. at 102; Boeing Co., 31 Fed. Cl. at 291. In the absence of these prior CDA claims and deemed denials, the Court of Federal Claims would have lacked jurisdiction to entertain the claims for money damages.

decision indicated that damages would be assessed against Lodge, and that the contracting officer subsequently quantified those damages when she executed the Tender and Release Agreement with Hanover. In other words, plaintiffs contend, the default termination decision and the Tender and Release Agreement collectively constitute a final contracting officer decision on a government claim assessing money damages.

In support of their position, Hanover and Lodge cite this court's decision in Roxco, Ltd. v. United States, 77 Fed. Cl. 138 (2007). In that case, the contracting officer issued a final decision assessing liquidated damages against the contractor in the amount of $909,791.00 and advised the contractor of its appeal rights. Id. at 140. On the same date, the contracting officer sent a demand letter to the contractor seeking payment of the assessed liquidated damages and advising the contractor that the remaining contract balance of $772,808.63 would be applied against the damage assessment. Id. In its amended complaint, the contractor asserted a claim for the outstanding contract balance of $772,808.63. Id. The government moved to dismiss this claim, arguing that the contractor had not first submitted a claim for the contract balance to the contracting officer. Id. at 145. Relying on the Federal Circuit's decision in Placeway Construction Corp. v. United States, 920 F.2d 903 (Fed. Cir. 1990),[4] the court denied defendant's motion, holding that the final decision and the demand letter "must be read together as a 'final decision' because, combined, the documents determine liability and damages." Roxco, Ltd., 77 Fed. Cl. at 148.

A key distinguishing fact renders Roxco, Ltd. inapplicable in this case. In Roxco, Ltd., the contents of both the final decision and the demand letter were adverse to the contractor. Id.; see also Placeway Constr. Corp., 920 F.2d at 907 (holding that because the contracting officer's decision was adverse to the contractor, the contractor could appeal that decision to the Court of Federal Claims). The contracting officer assessed liquidated damages against the contractor and stated that she would use the unpaid contract balance to satisfy that obligation; the contractor received nothing in return. Roxco, Ltd., 77 Fed. Cl. at 140. However, in this case, one of the documents–the Tender and Release Agreement–is not similarly one-sided. Rather, in that agreement, Hanover assented, among other things, to pay the Corps $23,995,183.86, and in return, the Corps assented, among other things, to release Hanover from claims under the performance bond. The agreement reflects a manifestation of mutual assent in which both parties received something of value. By definition, this means that the agreement could not constitute a decision adverse to plaintiffs. Without the required adverseness, the agreement cannot constitute a final contracting officer decision or a part of a final contracting officer decision. Thus, the only appealable contracting officer decision concerning the default termination is the default termination decision itself. And, because neither Hanover nor Lodge allege that the contracting officer assessed any damages in her default termination decision, plaintiffs cannot use that

---

[4] The Court of Federal Claims Technical and Procedural Improvements Act of 1992 superseded a portion of the decision in Placeway Construction Corp. not relevant here. See Pub. L. No. 102-572, § 907(b), 106 Stat. 4506, 4519 (permitting the Court of Federal Claims to render judgment in nonmonetary disputes arising under the CDA).

decision as the basis for their claims for termination for convenience costs and other money damages related to the default termination.

In the absence of a final contracting officer decision regarding termination for convenience costs or other money damages related to the default termination, whether premised on a contractor claim or on a government claim, the court must dismiss the claims for money damages set forth in Hanover and Lodge I.  This ruling, however, does not foreclose Hanover and Lodge from pursuing these claims.  To the contrary, by dismissing these claims for lack of jurisdiction, the court is removing the obstacle preventing the contracting officer from entertaining plaintiffs' claims for default termination-related money damages.

Normally, "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation.  That exclusive authority divests the contracting authority to issue a final decision on the claim." Sharman Co., 2 F.3d at 1571-72 (citations omitted).  Thus, if a contractor submits a new claim to the contracting officer while its prior claim is in litigation, and the new claim "arise[s] from the same operative facts, claim[s] essentially the same relief, and merely assert[s] differing legal theories for that recovery," Scott Timber Co., 333 F.3d at 1365, the contracting officer lacks the authority to act on the new claim.  However, as set forth above, there is no dispute that a claim challenging the propriety of a default termination is not the same as a claim for money damages resulting from the default termination.  See DePonte Invs., Inc., 54 Fed. Cl. at 116; Alaska Pulp Corp., 34 Fed. Cl. at 103-04; Boeing Co., 31 Fed. Cl. at 292.  Because they are distinct, a court's dismissal of one of the claims (e.g., a claim for money damages) both removes that claim from litigation and divests the United States Department of Justice of its exclusive authority to act on that claim.  As a result, the contracting officer is "revested with the authority to rule on" the dismissed claim, 5860 Chi. Ridge, LLC v. United States, No. 07-680C, 2009 WL 1106564, at *3 (Fed. Cl. Apr. 23, 2009), so long as the claim is timely submitted, see 41 U.S.C. § 605(a) (noting that claims must be submitted to the contracting officer for decision within six years of their accrual).  Hanover and Lodge therefore may submit their monetary claims to the contracting officer to obtain a final decision.

### III.  CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss and **DISMISSES**, without prejudice, the monetary claims set forth in Hanover and Lodge I for lack of jurisdiction.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge